Filed 3/25/24  P. v. Ferrell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098513 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE017258) |
| v. | |
| AUDREY NICOLE FERRELL, | |
| Defendant and Appellant. | |

Based on three separate incidents, a consolidated information charged defendant Audrey Nicole Ferrell with two counts of assault with a deadly weapon, battery with the infliction of serious bodily injury, vandalism, attempted murder, arson causing great bodily injury, and two counts of child endangerment.  The trial court denied defendant's pretrial motion for mental health diversion, finding, in effect, that, while defendant may be *eligible* for mental health diversion, she was not *suitable* for diversion because she would pose an unreasonable risk of danger to public safety if treated in the community. Defendant pled no contest to one count of assault with a deadly weapon, arson causing great bodily injury as reasonably related to the original charge of attempted murder, and

1

one count of child endangerment. The trial court sentenced defendant to an aggregate term of 11 years in prison.

Defendant appeals, asserting substantial evidence does not support the trial court's determination that she was not suitable for mental health diversion because she would pose an unreasonable risk of danger to public safety if treated in the community. Concluding substantial evidence supports the trial court's determination, we affirm. However, we will order the trial court to correct an error on the abstract of judgment.

BACKGROUND

On June 26, 2019, defendant argued with her brother-in-law. When the argument turned physical, D.S., the brother-in-law's boyfriend, convinced him to leave the area. They went across the street and sat on the sidewalk in front of a laundromat. Soon after, defendant drove into the area and stopped the vehicle in front of them. The two men began to walk away when defendant drove her vehicle in reverse, accelerating directly at them. Defendant drove the vehicle over the curb, struck D.S., and then drove the car halfway into the laundromat. D.S. sustained a broken leg. After defendant struck him with the vehicle, a bystander applied a makeshift tourniquet to "prevent massive blood loss."

On September 20, 2021, defendant grew upset with M.D., the father of one of her daughters. Defendant hit the windshield of his car with a curtain rod. Then she threw "boulders" at the windshield, damaging the vehicle. Defendant threw another rock as M.D.'s mother, D.M., tried to get in the car. A "boulder" hit both of her knees and she sustained a scrape injury.

On March 5, 2022, S.R.[1] was staying in a friend's RV when defendant came to visit S.R. and brought their daughter as well as defendant's other daughter. Defendant

---

[1] S.R. was also known as M.M. and is the same individual who was involved in the September 20, 2021, incident. Hereinafter, this individual will be referred to as S.R.

2

and S.R., who was paralyzed on his left side, argued and physically fought. At one point, S.R. "took . . . defendant to the ground and held her down by placing his elbow on her throat." When he saw defendant was having difficulty breathing, he let her up and she took the children to a back room. She returned, she and S.R. resumed talking, and defendant threw items at S.R. She picked up a bottle and squirted lighter fluid on him. She bent down, and, "flick[ing] her cigarette lighter, caus[ed] everything to go up in flames." S.R. was set on fire, as was the RV. S.R. exited the RV and rolled on the ground to extinguish the flames. Defendant started to help him, but he yelled at her to go back into the RV and get the children. Defendant managed to get both girls out safely. S.R. sustained burns to his chest, neck, and abdominal area. The fire significantly damaged the RV.

At the time of the September 20, 2021, and March 5, 2022, incidents, defendant had been released on bail on the June 26, 2019, offenses.

An amended consolidated information charged defendant with two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1);[2] counts one [D.S.] & four [D.M.]), battery with the infliction of serious bodily injury (§ 243, subd. (d); count two [D.S.]), vandalism (§ 594, subd. (a); count three [S.R.]), willful, deliberate, and premediated attempted murder (§§ 664, 187, subd. (a); count five [S.R.]), arson causing great bodily injury (§ 452, subd. (a); count six [S.R.]), and two counts of child endangerment (§ 273a, subd. (a); counts seven & eight). In connection with count one, the information alleged defendant personally inflicted great bodily injury. (§ 12022.7, subd. (a).) The information also alleged defendant committed counts three through eight while released from custody on bail. (§ 12022.1.) Lastly, the information alleged the aggravating circumstance that the crimes "involved great violence, great bodily harm,

---

[2]    Undesignated statutory references are to the Penal Code.

3

threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).)

Defendant filed successive motions for pretrial mental health diversion pursuant to section 1001.36. She argued she was eligible for mental health diversion under section 1001.36, subdivision (b), and that she was suitable for diversion under subdivision (c). As to the latter, defendant asserted "the Court should not find that [she] falls into [the] 'narrowly confined' category of individuals who are likely to go out and commit a supers-trike offense, since she will be participating in treatment." In opposition, the prosecution did not argue defendant was ineligible under section 1001.36, subdivision (b). Instead, relying on the underlying facts and the fact that defendant had been released on bail during the second and third incidents, the prosecution asserted defendant was not suitable for diversion because she posed an unreasonable threat to public safety.

During argument on the motion, defense counsel "primarily submit[ted] on the pleadings." However, counsel did argue that section 1001.36 does not exclude a defendant from eligibility for mental health diversion based on being charged with attempted murder or other serious crimes. Rather, to be denied mental health diversion, the court must conclude a defendant is substantially likely to commit a "super strike" offense.

The prosecutor asserted, "defendant has given us a preview of the likelihood that she will commit a super strike while in the community by the fact that she committed two super strikes while in the community." The prosecutor further argued, "she's out on bail . . . . She's been given a chance to be out in the community and she demonstrates exactly her likelihood to commit a super strike" by committing the incident in the RV. After summarizing the facts from each of the three incidents, the prosecutor reiterated, "we have a defendant that's shown already that she has a propensity to commit super strikes when out in the community."

4

The trial court denied defendant's motion. The court stated that the "facts in this case as agreed upon by the parties gives the Court sufficient information to draw conclusions aside from how the D.A. charged." The court continued: "[T]here is no doubt that you have mental health issues in terms of the horrendous background . . . . It is an uphill battle. And you've already had options and opportunities for treatment aside from—it is not that I don't have sympathy for your case or that I don't feel a program would be helpful to you, but I also am bound by the law. [¶] And thank God, if you believe in God, you didn't kill two people, [D.S.], or [*sic*] severely injured and suffers still to this day, but to run over—back up and run over someone with a car could have easily killed them. And to set fire in a small area to a person with two children that you left there and that it didn't blow the whole thing up and kill everyone in there is—I think it would be fair to say that the potential there was for things to be much worse for you today than they are, the potential for super strike. [¶] That conduct is in no way related to the incident [in *People v. Whitmill* (2022) 86 Cal.App.5th 1138] where someone shot a gun in the air. There was an effort to do damage that failed on one level, meaning that no one died. But the suffering of [D.S.] is substantial and the potential for his death was just clear. To run over somebody with a car and then to set fire to somebody who probably couldn't have run out as I understand it. He's a form of disability, but with two children in the same place. [¶] That conduct would be . . . a 'super strike' I think it is fair to say. It is fortunate that that wasn't the outcome. And frankly, this is a bad thing to say, but I sort of agree here that if you could have been picked up and put in the treatment after the first offense maybe it could have made a difference. [¶] But right now I don't think the law would allow me to put you into mental health court even though I see that you have a serious problem with addiction and mental health to cause the conduct set forth in the paperwork by both attorneys. So regrettably, I can't make a decision that would allow you that opportunity, so I'll deny the request."

5

Defendant pleaded no contest to count one, assault with a deadly weapon (§ 245, subd. (a)(1)), amended count five, arson causing great bodily injury (§ 451, subd. (a)) as reasonably related to the original pleading of attempted murder, and count seven, child endangerment (§ 273a, subd. (a)), and admitted the truth of the personal infliction of great bodily injury enhancement allegation attached to count one (§ 12022.7, subd. (a)), the on-bail enhancement allegation (§ 12022.1), and the aggravating circumstance (Cal. Rules of Court, rule 4.421(a)(1)).  The court dismissed the remaining counts with a *Harvey* waiver.  (See *People v. Harvey* (1979) 25 Cal.3d 754.)

The trial court sentenced defendant to an aggregate term of 11 years in prison, consisting of the middle term of seven years on count five, one year, or one-third the middle term, on count one, a concurrent low term of two years on count seven, one year, one-third of the three-year term, for the section 12022.7, subdivision (a) enhancement, and two years for the section 12022.1 enhancement.

## DISCUSSION

### I

### *The Parties' Contentions*

According to defendant, because the trial court implicitly found her eligible for mental health diversion under section 1001.36, subdivision (b), the only issue is whether the court properly denied mental health diversion based on suitability under section 1001.36, subdivision (c).  Defendant asserts substantial evidence does not support the court's conclusion that, if granted pretrial mental health diversion, she would pose an unreasonable risk to commit a super strike offense.

The People disagree, asserting substantial evidence showed defendant posed an unreasonable risk of danger to public safety.  The People emphasize defendant had already been charged with a super strike, attempted murder in count five, and further that, as the trial court found, the assault with a deadly weapon charged in count one easily could have resulted in death.

We conclude substantial evidence supports the trial court's determination, and the trial court did not abuse its discretion in denying defendant's motion.

## II

*Section 1001.36, Eligibility and Suitability, and Standard of Review*

Pretrial mental health diversion under section 1001.36 "requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891.) The criteria for eligibility are set forth in section 1001.36, subdivision (b), and address: (1) the defendant's diagnosis with a qualifying mental disorder, and (2) whether the defendant's mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b).)

"For any defendant who satisfies the eligibility requirements in subdivision (b), the court must consider whether the defendant is suitable for pretrial diversion. A defendant is suitable for pretrial diversion if all of the following criteria are met: [¶] (1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c).)

The suitability component addressing whether a defendant will "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community" (§ 1001.36, subd. (c)(4)) is construed as meaning " 'an unreasonable risk

7

that the petitioner will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv)." (*People v. Whitmill, supra*, 86 Cal.App.5th at p. 1149.) "By requiring an assessment of whether the defendant 'will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv), a trial court necessarily must find the defendant is 'likely to commit a super-strike offense.' [Citation.] Thus, the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*People v. Moine* (2021) 62 Cal.App.5th 440, 450.)

The super strike offenses encompassed in the statute's definition " 'include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment,' " as well as "sexually violent offenses and sexual offenses committed against minors under the age of 14." (*People v. Moine, supra*, 62 Cal.App.5th at pp. 449, 450; see § 667, subd. (e)(2)(C)(iv).)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. [Citations.] . . . [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Whitmill, supra*, 86 Cal.App.5th at p. 1147.)

## III

### *Analysis*

The prosecution and the trial court, and the parties on appeal, essentially accept the premise defendant is *eligible* for pretrial mental health diversion under section 1001.36, subdivision (b). We shall proceed directly to defendant's contested *suitability* for diversion under section 1001.36, subdivision (c) as the most expeditious manner of resolving the appeal. Additionally, because the requirements under section 1001.36, subdivision (c)(1) through (3) are not contested, we proceed directly to whether

8

defendant will "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)

The evidence indicates that, in the first of the three incidents, defendant was in a disagreement with her brother-in-law that turned physical. Her brother-in-law and D.S. left the scene, but defendant drove to where they had gone and deliberately drove her car directly at them, accelerated, and struck D.S., breaking his leg and necessitating a tourniquet so as to avoid "massive blood loss." She was driving with enough speed and force as to drive her car halfway into the laundromat.

While out on bail following that offense, defendant got into an argument with S.R. She hit his car with a curtain rod and then threw "boulders" at the car, damaging it. She also struck D.M., S.R.'s mother, with a "boulder" as she tried to get into the car, resulting in a scrape injury.

Also while released on bail, defendant brought two children to the RV where S.R. was staying and argued with him. The argument turned physical, and S.R. took defendant to the ground, placed his elbow on her throat, and caused her to have difficulty breathing. After he let her up, she squirted lighter fluid on him and set him on fire, as well as setting the RV ablaze. She did attempt to help S.R. extinguish the fire that was burning him, but he yelled at her to get the children out of the RV, which she did. S.R. sustained burns to his chest, neck, and abdominal area. The RV sustained a great deal of damage as a result of the fire.

The third incident initially was charged as an attempted murder. The facts would seem to justify such a charge. The first incident, where defendant deliberately struck D.S. with her vehicle, also could have given rise to such a charge. These were extremely serious offenses. As the trial court observed, the victims in the first and third incidents, including the children, could have been killed as a result of defendant's actions.

We conclude these facts constitute substantial evidence supporting the trial court's determination defendant would "pose an unreasonable risk of danger to public safety, as

9

defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) As the prosecutor argued before the trial court, defendant has shown she is likely to commit super strikes when released into the community.

Despite the potentially deadly and extremely violent nature of these incidents, defendant nevertheless argues that insufficient evidence supports the trial court's suitability determination, relying on S.R.'s testimony at a March 29, 2023, preliminary hearing. S.R. testified that, when he and defendant argued in the RV, he punched her three times in the head with a closed fist, knocked her down, and choked her until she could not breathe. According to S.R., despite the danger to herself, defendant had immediately patted out the fire on him and was very caring. Moments after extinguishing the fire on him, defendant ran into the burning RV and removed the children.

This preliminary hearing, however, occurred more than two weeks *after* the trial court's denial of defendant's motion. "We review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739 [review of competency determination].)

In any event, even if we did consider this evidence, it does not undermine our conclusion. S.R.'s preliminary hearing testimony does not negate the substantial evidence we have discussed that supports the trial court's conclusion. And, where substantial evidence supports the findings of the fact finder, " 'reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

Defendant asserts that, in considering the third incident, the court relied on the charges in that case because the detailed facts of the incident were not elicited until the subsequent March 29, 2023, preliminary hearing. Defendant then quotes from *People v. Qualkinbush* (2022) 79 Cal.App.5th 879: "[F]or purposes of evaluating the defendant's eligibility and/or suitability for pretrial mental health diversion, the court must treat the

matter as if the charges against the defendant have not yet been adjudicated; the court is not sentencing the defendant." (*Id*. at p. 892, fn. 11.) To the extent defendant asserts the trial court improperly relied on the charges, we disagree. In assessing whether the defendant will pose an unreasonable risk of danger to public safety if treated in the community, the court may consider, among other things, "the opinions of the district attorney, the defense, . . . the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).) The court considered the offenses as charged, as well as the parties' motion papers and the summaries of the police reports. The prosecution's opposition also included photographs depicting the injured D.S. on the ground, defendant's vehicle partially inside the laundromat, S.R.'s damaged vehicle, the RV and the fire damage it sustained, and several of S.R.'s burns. In short, we have already concluded substantial evidence supports the court's determination, and, to the extent defendant relies on *Qualkinbush* to imply the court's analysis was procedurally flawed, we disagree.

Lastly, as the People observe, the abstract of judgment erroneously indicates the section 12022.1 enhancement applies to count one, whereas it actually applies to count five. We shall order the abstract corrected.

DISPOSITION

The judgment is affirmed. The trial court shall prepare a corrected abstract of judgment to reflect that the section 12022.1 enhancement applies to count five, not count one, and forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
HULL, J.

_____/s/_____
WISEMAN, J.*

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12